Mr. Hershman. Thank you, Your Honor. My name is Harold Hershman, and I represent both National The critical issue that I'd like to address, and I'll save five minutes for a rebuttal if that's permissible, is the causal nexus, which has caused the lien that issued when the complaint was filed by Mr. Hennessy, a lawyer, in the state court. He attached a false document. So the lien at issue is the fruit of a poisoned complaint and can't be torn asunder from its source, which is what the trial judge did. Mr. Hershman, I've got a question that I think goes deeper than any of the arguments you were making, which is, what is this case doing in federal court? What seems to have happened is that you are attempting to litigate in federal court a single issue relevant to a pending state case. Why doesn't that issue belong in the pending state case? Your Honor, there is diversity jurisdiction. It was challenged. I'm not concerned about that. I'm concerned about the effort to litigate in federal court one issue in a pending state case. The issue is, since there is diversity, since the Indiana criminal statute does provide for a remedy, and as far as I know, under Indiana procedure, there's no obligatory counterclaim. This isn't even a counterclaim. This is a defense on the merits. But it doesn't matter whether it's a counterclaim or not. Forget about diversity for a moment. Suppose, while the first case was pending in Indiana state court, you filed a second lawsuit in a different Indiana state court. Would Indiana permit that? I am not sufficiently familiar with all of Indiana procedure to answer that. I find it very hard to believe they would say something like, this issue belongs in the first case. Why shouldn't we say exactly the same thing? Because, Your Honor, there is the right of the plaintiff to decide what forum, assuming there is jurisdiction. No, plaintiffs don't. People do not have a right to choose a different forum than the one in which a case is already pending. You can move to transfer the case. You can move to dismiss for forum nonconvenience. But you can't just file a single issue claim someplace else. I don't think it's as, first of all, I don't know that, I know that the issue of abstention in favor of the state court case was not raised by the parties. Abstention is an issue that can be raised by a federal court on its own motion. So the Supreme Court has held. Yes, but in the same sense, as Your Honor is obviously familiar, it is not a usual practice for the appellate court. It is not a usual practice for a federal court to attempt to decide one issue in a pending state case. Let me put this differently. Do you have any decision of the Supreme Court or of this court saying that this is a proper thing for a federal court to do, ever? Your Honor, obviously this wasn't raised in the briefs, and Your Honor is raising it now on appeal. And we would be happy to address that with some briefing after this argument if the issue remains. I think that might be a very good idea. I understand that. I'm not surprised. But if I could address the issue. Certainly. Thanks. The issues that are presented, which is what the trial court did was make a decision as a matter of law that the complaint that was actually filed was irrelevant because this lien could have been created by a different complaint which didn't attach the poisoned exhibit. It's a functional equivalent of saying that somebody who is defending themselves from a shoplifting charge would say to the court, oh, no, no, no, I had the money. I could have bought the item that I shoplifted. It's not good enough. There was an intentional choice by a lawyer to use a document which he knew was not correct. Because if he had come to the state court with a complaint which was true, that is to say, I was the master of my offer, and I required it to be accepted in a given time frame, and it was not accepted. I do not have a piece of paper that says it was accepted. Quite to the contrary, I have a piece of paper that was countered. No Indiana court would have said at that point that he had satisfied the statute of frauds and could be made the owner of the property. All the more reason why this should be in state court. Once you start telling us no Indiana court would do X, the best way to find out what an Indiana court would do is to litigate this in an Indiana court. Yes, that's the most, that's the simplest way to do it, but the question is whether that simplicity is mandatory. And so here, that isn't what happened. National Assets, which by the way, was not a proper defendant in the state court, was the person who chose to come here in the first instance in order to protect itself from what had been achieved in the state court by the false pleading. It probably could have intervened, but the question is whether it was mandatory that it intervene, and I think not. Midwest Holdings obviously was a defendant here originally. It was a defendant in the state court proceeding. So perhaps viewed from the lens of Midwest Holdings, Your Honor's position that it was mandatory that the parties litigate this in state court would make sense. But I don't think you can avoid the fact that National Asset Consultants had its own independent right, and it wasn't a defendant in the original state court. So what you're saying is that they had to move to intervene in the state court to raise what Your Honor says is a defense, and I don't think that that's necessary. And I don't think, although I certainly do not pretend to be as expert as Your Honor on the issues of the jurisdiction here, I can't think of a case, and that's hardly critical, although it would be critical to the post-argument briefing, where when you have a situation where there is no contract to purchase, which is a fundamental principle of contract law, which the trial court obviously understood, and which is easy to envision if Mr. Hennessy had come to the state court and said, I don't have a contract, but I want to be the owner of the property. The answer to that is obviously no. If he had filed a true complaint, an honest complaint, then it would have been thrown out and the lien would have been thrown out just like that. Mr. Hirshman, a follow-up on that is I understand your argument contesting Judge Sweeney's causation conclusion. It relies upon a narrative that individuals, Mandresh, et cetera, took certain steps to make allegations. If, in fact, they wanted to dispute the checkbox and the countered, why would they have attached to the complaint all three documents? Wouldn't they have substituted that one page that said the altered purchase agreement was as altered, not as original? Well, they might have done that. On the other hand, perhaps they were seeking a certain amount of cover to say that what the narrative was that, well, we thought it was a mistake. So they didn't want to create a totally false record. They only created a partially false record. That is to say that they put the two Exhibit 8s, and any reader would naturally conclude that whatever the first Exhibit 8 was, the counter, had been obviated by the second document where it was crossed out and where it says offer accepted. So you could say they weren't as bad as they could have been. But I don't think that's an answer to the fact that they were bad. And it didn't stop with the state court. Because here at Docket 94, you'll find that Mr. Hennessy et al. are still trying to get damages based on an offer that was never accepted. And his modus operandi was of necessity using Ms. Mandridge's created document. Now, if you look at what Tucker and Mandridge are saying, they said, oh, this was just for our file. Well, if it was just for our file, we wouldn't be here. Because it had to move from the file to Mr. Hennessy, who, acting as his own lawyer in the state court, used it as a weapon and was successful. And there are damages which flow from it, as the trial court found. But what he found was that there was this intervening notion, not a cause, but a hypothetical complaint which was not filed. And so we're in a situation where there's remarkable evidence. This business about ammo. I'm providing you with ammo. And as Ms. Mandridge says, I'm all in with you. Because she had to be all in. Because otherwise, there is no ability for Mr. Hennessy to do anything but attach a piece of paper that says, I don't have a deal. And he's obviously not going to do that. So this looks like a Solomonic decision. Nothing for you, nothing for you. That's the end of the deal. And perhaps the district court was aggravated with these people, and didn't like any of them. And it came to that conclusion. But that was not appropriate. He was compelled to look at the real world, what actually happened, and not substitute a hypothetical. I'm not exactly sure what my time is, Your Honor. It's right in front of you. But I don't know whether that's the reserve. You have two minutes left in total. If you want to save any time for rebuttal, this is the time. I'm sorry? I still didn't hear you. You get instructions on this at the clerk's office. There are two minutes left. If you want to save any time for rebuttal, now is the time. Fine. Thank you, Your Honors. Mr. Rodolfo. May it please the court, my name is Tony Rodolfo. I represent F.C. Tucker and Ms. Mandrisch. This morning, I would like to make two points. The first point is the district court correctly ruled that the Liz Pendens was the but-for-cause of the claimed damages. Mr. Rodolfo, you heard my questioning of Mr. Hirschman. What is your view about this subject? We certainly, they are, you're correct, they are raising a defense to a state court complaint that should have been raised there. The state court complaint has said idle since it was filed. There was a motion for preliminary injunction filed, I believe, the following day. The defense to the action could be brought there. But what is your view about the question I asked, which is whether it is permissible to do that in federal court? I. Have you done, has anybody done any legal research on this question? No. All right. Well, we will be asking for supplemental memos. Okay. This is very disappointing. The second point I would like to make is if the court disagrees with the district court on the but-for-cause, that no reasonable jury would conclude that Mandrisch or Tucker committed the elements of the property offenses. With respect to causation, the district court ruled that the filing of the lease pendants, not the second page eight with Ms. Mandrisch's initials, was the cause of the claim damages. In looking at the act, we believe the court. By the way, has anybody asked the judge in the pending state case to cancel or lift the lease pendants? No. And I think the district court noted that in the opinion. Yeah. The question I was asking was whether that is right or whether something has been done since the district court's opinion. Has anybody filed anything in state court since the district court's opinion? Not to my knowledge. No. I find this utterly bizarre that everyone's ignoring the state case to which this issue might matter while asking the federal court for an opinion on one issue in a pending state case. Proceed. Okay. And on the state court, as the court knows, Tucker and Mandrisch are not parties to that action. So they advance two arguments with respect to the but-for cause analysis. They advance a substantial factor analysis. They cite cases from this court that rely on a 1971 Indiana Court of Appeals decision. They're mistaken. The district court was correct that the statute's penal in nature. It should be strictly construed. It requires a but-for causal nexus. Even the case they cite states and without which the result would not occur. Well, I've got one more question that I hope you can answer about the relation between the state and federal litigation. How long after the state case began was the federal suit filed? It was filed in the spring. How long? Several months. Several months. Yes. In other words, greater than 30 days, beyond the time to remove the whole state case. Correct. Okay. Thank you. That's correct. So on the causation, I would direct the court to the COVEC versus Midwest decision, which says to establish factual causation, the plaintiff must show but-for the defendant's alleged tortious act or omission. The injury at issue would not have occurred. We think that's the right standard. The district court ruled that it was the filing of the dispendants, which is required by law, which caused the damage. In fact, appellants have never said anything to the contrary. Their expert that they proffered, which is as found at 204-12, speaks at length that it was the short sale, the inability to refinance, the inability to sell that caused their damages. We believe that the evidence is clear and consistent with the district court. The second point I'd like to make is if we look at the evidence and the question is asked, why did Mr. Hennessy attach the second page 8 with Ms. Mandrisch's initials? He testified to that. This is found in his deposition at pages 73 and 74, which is 196-21 of the record, and he explained that he wanted to be truthful with the court. He had it. He wanted the court to have everything he had. He didn't want to be criticized for producing one and not the other. When he was asked on page 113 of his deposition, you're using the altered instrument to cloud title on River property, though. He said, no, I'm using a combination of facts and circumstances that have led me to believe and confirmed in my own mind sufficiently to file suit indicating it was a contract for sale of the property. And his testimony is corroborated by the state complaint, and that's what the district court said. The district court said that any reasonable reader of that complaint would conclude that it wasn't the second page 8 with Ms. Mandrisch's initials that led to it. It was the course of conduct. In fact, Mr. Blyer requested an amendment, which was fully executed. He sent an email to the title company saying, Dan, please see executed purchase agreement, attaching his response and the amendment to the purchase agreement. He asked about whether they'd be interested in selling it to another buyer or selling it back, and they asked for a second amendment. When you read the complaint in its entirety, it is clear that the second page 8 with Ms. Mandrisch's initials was not the only reason, the sole reason that complaint was filed. That's what the district court said. We believe that appellants are asking to speculate to draw that conclusion. Turning to the issue of the elements of the property offenses, if you disagree with the district court on causation and we have to look at the record and compare it with the elements, I think it's important to look at how it was transmitted and how it was created. It was created on January 6. At the time she created it, she believed that there was a pending transaction, and it was based upon some of the actions of Mr. Blyer. He had requested the amendment. He had spoken with her in text message with her about the title company. He had changed the listing in the BLC to pending from active, which is only done to take a property off the market. He even emailed, as I indicated, the title company saying, see executed purchase agreement. At the time she made that document, and she took a photocopy of it, and she initialed it and put it in a record. She believed, as did Mr. Blyer at that time, that there was a pending action. As for the transmission of that document to Mr. Hennessey, that was done on January 11th. I draw your attention to Exhibit 20410. It is the January 11th email to Mr. Hennessey. Page 8, which is the document with Ms. Mandrisch's initials, is a separate attachment. He asked for her file. She sent the file. She did not attach it to the response. It was sent as a separate document. We think that's important, because when you look at the alleged property offenses, especially forgery and counterfeiting, we're dealing with what is a written instrument. The second page 8 in and of itself is not an instrument. As it was transmitted, it was part of a file. It wasn't a written instrument for these reasons. And with respect to deception, I see my time is up, deception and forgery, that requires a second layer of fraud, intent to defraud. There's no question on this record that exists. We would ask this Court affirm the ruling of the District Court. Thank you. Thank you, Counsel. Mr. Osbrook. May it please the Court. I'm Michael Osbrook. I represent David Hennessey and Vicki Yaser, the would-be buyers in this case. To answer your question, Judge Easterbrook, about jurisdiction, as much as I would love to say that I think federal court doesn't have jurisdiction in this case, I have to agree with my friend, I think, that there's nothing in Indiana law or federal law that would This is not a question about jurisdiction. Well, This is a question about abstention. Let me answer directly your question about whether Indiana would permit this case to be filed separately in state court. I think the answer is, I think it's a 1994 case. I can send up a 28-J letter. It's for Varnick, the Northern Indiana Public Service Company, a case of the Indiana Supreme Court. If you have a race to the courthouse, it's the first court that gets it that has jurisdiction. I think that at most what would happen in Indiana, if NAC had filed a case in another court, there would have been discretionary consolidation of the cases, probably at the discretion of the first court, the judge in the first court case, which would have been Mr. Hennessy's. Moving on to the question of cause and fact, we also believe the district court was correct that the second page eight that was included, no reasonable juror could find that that was the cause and fact of Mr. Hennessy's complaint. If there was a cause and fact, it was Mr. Blyer's email saying, see the written purchase agreement. Also, NAC and Midwest had conceded that although mistakenly Mr. Blyer's email said that there was a purchase agreement. If they believe there was a purchase agreement, knowing that Ms. Mandrash initialed page eight, then the second page eight, the second page eight cannot have been the basis for their belief in there being a purchase agreement. Therefore, it cannot, the second page eight cannot be the cause of their filing a complaint. But more fundamentally, this case, Judge Sweeney refused to give Mr. Hennessy and Ms. Yazer the litigation privilege, Indiana's litigation privilege in this case. And this is actually the classic case for the litigation privilege. There is notice pleading in Indiana. And we know from Mr. Hennessy's deposition, both as Mr. Rodolfo cited pages 73 to 74. And also I would call court's attention to page 31 where he, Mr. Hennessy said there was an entire course of conduct that led him to believe that there was an agreement. And the litigation privilege in Indiana is precisely for this situation in which Mr. Hennessy puts everything he has from Ms. Mandrash into court saying, here's what I have. I think all of this together constitutes a purchase agreement, especially the concession by the seller and the seller's agent, Mr. Blier see the purchase agreement. And so there was nothing dishonest about anything Mr. Hennessy did. I think Mr. Rodolfo already mentioned three mentioned some of the course of I would like just to call court's attention to three things. Again, Mr. Blier's email, see the executed purchase agreement. There was no counteroffer attached to what Mr. Blier sent back. The agreement said, attach your counteroffer. Instead of a counteroffer, shortly later, an amendment changing the title company came in. And as Mr. Rodolfo mentioned, the listing was changed from on the market to pending. This is the classic case for which Mr. Hennessy and Ms. Yaser should be There are very few cases on the subject. There is, as we argued in our brief, there's a state of mayor. And the remedy, if it turns out there actually was skullduggery, is an abusive process claim. That's what a state of mayor says. There's essentially an absolute privilege for litigation documents. Finally, on the elements, they have conceded that Mr. Hennessy and Ms. Yaser believed, although mistakenly, that there was a purchase agreement. That takes care of, they cannot be entitled to partial summary judgment on either the deception claim or the forgery claim. Both require an intent to defraud. Mr. Hennessy and Ms. Yaser cannot have had the intent to defraud if they actually believe that there was a purchase agreement. We ask that the court affirm the district court. Thank you very much. Anything further, Mr. Hirschman? Yes, Your Honor. I looked back over the state court complaint, and of course there's only one defendant, Midwest Holdings. So in order to have a situation where the state court case would control all of these issues, national asset consultants would have to join, have to intervene. And Ms. Mandrisch and the Tucker firm would have to become involved either by some kind of cross-complaint or something like that. I will say, it's not even a party to the state case. I don't understand how it has standing. Perhaps our separate briefing order will have to address that as well. And the idea that what transpired in the state court case is privileged is, well, obviously the district court judge rejected that, and rightly so, said he wasn't going to expand the privilege. The Aode case versus Mobile here characterizes very similar conduct as a fraud on the court. And so the intention would normally be a question of fact, but here what they have tried to create is a sense that there was a contract because Ms. Mandrisch sent an email to her client saying there was a contract. But if she had simply examined what she got, she would have known it wasn't a contract. And at that point, a broker in the normal course would go back and seek it. We will issue an order later today calling for the filing of supplemental memos in this case. And when they have been received, the case will be taken under advisement.